RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE ___9/17/15___

b

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| LADAYTRON MANDEZ VINZANT,<br>          Plaintiff | CIVIL ACTION<br>SECTION "P"<br>NO. 1:14-CV-00147 |
| VERSUS | |
| CARL SMITH, et al.,<br>          Defendants | JUDGE JAMES T. TRIMBLE, JR.<br>MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

It is recommended that defendant Haworth's motion for summary judgment (Doc. 52) be granted and that Vinzant's action be dismissed.

### Procedural History

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, in forma pauperis, by pro se plaintiff LaDaytron Mandez Vinzant ("Vinzant") on January 29, 2014 and amended on May 27, 2014 (Doc. 9) and August 4, 2014 (Doc. 13). The sole remaining defendant is Sandy Haworh ("Haworth"), a corrections officer employed by the LaSalle Correctional Center ("LCC") in Olla, Louisiana (Doc. 13).[1]  Vinzant contends that, while he was confined in the LCC in 2013, defendant Haworth retaliated against him, used excessive force, and denied him medical care.

---

[1] Vinzant's action against the other named defendants has been dismissed (Doc. 16).

Vinzant alleges claims of retaliation and failure to provide medical care.  In his verified complaint and deposition (Docs. 13 & 53, pp. 32-34/85), Vinzant contends that, on June 16, 2013, Deputy Curtis Sisom ordered Vinzant to leave his job in the kitchen and return to his dorm.  Vinzant contends that, when he pointed out that he was the only "pots and pans" person in the kitchen, the officer threatened to throw Vinzant out (Docs. 13 & 53, pp. 32-34/85).  Vinzant then advised Deputy Curtis Sisom that, if he (Vinzant) was harmed in any way, he would pursue legal action towards all participants (Docs. 13 & 53, p. 34/85).

Subsequently, Sisom's supervisor, Haworth, called Vinzant out of his cell to question him about an allegedly illicit bottom-bunk pass and told Vinzant to repeat what he had told Sisom (Docs. 13 & 53, pp. 35-41/85); when Vinzant refused to respond, Haworth sprayed a chemical agent, "FOX," into his right ear (Docs. 13 & 53, pp. 42-).  Vinzant further contends that, after Haworth sprayed him, other officers kicked and punched him, and denied him medical care (Doc. 13).  Vinzant contends he was given a five minute shower that only inflamed the chemical agent, and the chemical agent was not fully removed until Vinzant was allowed to take a complete shower the next day (June 17, 2013) (Doc. 13).

Vinzant contends he was transferred to the Riverbend Detention Center in Lake Providence, Louisiana on June 18, 2013, where a doctor advised him that his ear was severely swollen and required

2

medication (Doc. 13).

For relief, Vinzant asks for monetary damages (including punitive) (Doc. 13).  Vinzant is currently confined in the West Baton Rouge Transitional Work Program in Port Allen, Louisiana.

Haworth answered the complaints (Doc. 19) and filed a motion for summary judgment (Doc. 52).  Vinzant filed a response to Haworth's motion (Doc. 58), to which Haworth replied (Doc. 59). Haworth's motion for summary judgment is now before the court for disposition.

<u>Law and Analysis</u>

<u>Summary Judgment</u>

Rule 56 of the Federal Rules of Civil Procedure mandates that the court shall grant a summary judgment:

> "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes

of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material." A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82 (1992).

Qualified Immunity

Defendants contend they have qualified immunity from Haworth's claims.

The defense of qualified immunity protects a public official from both litigation and liability, absent a showing that the official violated a constitutional right that was clearly established at the time of the incident. Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995), cert. den., 516 U.S. 1084, 116 S.Ct. 800 (1996). Qualified immunity cloaks a police officer from personal liability for discretionary acts which do not violate well established law. Officers have qualified immunity if their actions could reasonably have been thought consistent with the right they are alleged to have violated. Richardson v. Oldham, 12 F.3d 1373, 1380-81 (5th Cir. 1994), and cases cited therein. Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful. Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 2515 (2002).

Invocation of the qualified immunity defense shifts the burdens of proof in federal civil rights lawsuits brought against public officials for actions or omissions attending their performance of official duties:

> "The defendant official must initially plead his good
> faith and establish that he was acting within the scope
> of his discretionary authority. Once the defendant has
> done so, the burden shifts to the plaintiff to rebut this
> defense by establishing that the official's allegedly
> wrongful conduct violated clearly established law."

Bazan v. Hidalgo County, 246 F.3d 481, 489 (5th Cir. 2001), citing Salas v. Carpenter, 980 F.2d 299, 306 (5th Cir. 1992).

The bifurcated test for qualified immunity is: (1) whether the plaintiff has alleged a violation of a clearly established constitutional rights; and, (2) if so, whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident.   Hare v. City of Corinth, 135 F.3d 320, 325 (5th Cir. 1998), and cases cited therein.

The first step is to determine whether the plaintiff has alleged violation of a clearly established constitutional right. This analysis is made under the currently applicable constitutional standards.   Hare, 135 F.3d at 325.   A constitutional right is clearly established if, in light of pre-existing law, the unlawfulness is apparent.   Officials must observe general, well-developed legal principles.   Doe v. Taylor Independent School Dist., 15 F.3d 443, 445 (5th Cir.), cert. den., 513 U.S. 815, 115 S.Ct. 70 (1994).

The second prong, objective reasonableness, is a question of law for the court.   The analysis for objective reasonableness is different from that for deliberate indifference (the subjective test for addressing the merits).   For qualified immunity, the subjective deliberate indifference standard serves only to demonstrate the clearly established law in effect at the time of the incident and, under that standard (the minimum standard not to

be deliberately indifferent), the actions of the individual defendants are examined to determine whether, as a matter of law, they were objectively unreasonable. Hare, 135 F.3d at 328.

The qualified immunity doctrine does not protect an official whose subjective intent was to harm the plaintiff, regardless of the objective state of the law at the time of his conduct. Douthit v. Jones, 619 F.2d 527, 533 (5th Cir. 1980). A party seeking to avoid a qualified immunity defense must prove that the official either actually intended to do harm to him, or took an action which, although not intended to do harm, was so likely to produce injury that the harm can be characterized as substantially certain to result. Douthit, 619 F.2d at 533.

The qualified immunity defense involves a shifting burden of proof. The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law. The Fifth Circuit does not require that an official demonstrate that he did not violate clearly established federal rights; that burden is upon plaintiffs. If a plaintiff states a valid claim, the plaintiff bears the burden of demonstrating the defendant's actions violated clearly established law. Salas v. Carpenter, 980 F.2d 299, 306 (5th Cir. 1992), and cases cited therein.

Exhaustion of Administrative Remedies

First, Haworth contends Vinzant's claim should be dismissed for failure to exhaust his administrative remedies.

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.  42 U.S.C.  § 1997e(a).  Jones v. Bock, 549 U.S. 199, 211, 237 S.Ct. 910, 918-919 (2007).  Exhaustion is mandatory, irrespective of the forms of relief sought and offered through administrative remedies.  Booth v. Churner, 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819 (2001).  The exhaustion requirement of 42 U.S.C. § 1997e applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.  Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 992 (2002).  Resort to a prison grievance process must precede resort to a court.  Porter, 534 U.S. at 529, 122 S.Ct. at 990.

Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact.  Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010), citing Carty v. Thaler, 583 F.3d 244, 252 (5th Cir. 2009), cert. den., 559 U.S. 1106, 130 S.Ct. 2402 (2010).  Since exhaustion is an affirmative defense, the burden is on the defendants to demonstrate that Greenup failed to exhaust available administrative remedies.  Jones v. Bock, 549 U.S. 199, 216, 127

8

S.Ct. 910 (2007).  Defendants must establish beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor. <u>Dillon</u>, 596 F.3d at 266, citing <u>Martin v. Alamo Cmty. Coll. Dist.</u>, 353 F.3d 409, 412 (5th Cir. 2003).

The exhaustion requirement imposed by amended § 1997e is not jurisdictional. <u>Woodford v. Ngo</u>, 548 U.S. 81, 101, 126 S.Ct. 2378, 2392 (2006).  However, the Fifth Circuit held in <u>Gonzalez v. Seal</u>, 702 F.3d 785, 788 (5th Cir. 2012), that exhaustion is mandatory and district courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint; a case must be dismissed if available administrative remedies were not exhausted.

The Louisiana Administrative Code provides for a situation, such as Vinzant's, when an inmate is transferred to another institution.  L.A.C. 22:I.325(F)(3)(a)(xi) states, "When an offender has filed a request at one institution and is transferred prior to the review, *or if he files a request after transfer on an action taken by the sending institution*, the sending institution shall complete the processing through the first step response.  The warden of the receiving institution shall assist in communication with the offender."

Vinzant contends the incident occurred on June 16, 2013 and he was transferred from the LCC to the Riverbend Detention Center (in East Carroll Parish) on June 18, 2013.  Vinzant further contends

and testified in his deposition that he mailed an ARP to the
LaSalle Correctional Center on July 13, 2013 (Doc. 53, pp. 22-
24/85; Doc. 58); Vinzant filed a copy of that ARP (Doc. 20).
Vinzant contends and testified in his deposition that, when he did
not receive a response from the Warden at LCC, he mailed an ARP to
the Louisiana Department of Corrections ("LaDOC") on August 5, 2013
(Doc. 58); Vinzant filed a copy of that ARP, also (Doc. 20).
Vinzant contends he did not receive a response from the LaDOC,
either (Doc. 58).

Vinzant has not shown that he actually mailed the ARPs.
Vinzant has not submitted receipts to show that he paid for postage
to mail them, nor has he submitted copies of the prison mail log to
show he mailed them.

Haworth argues that, accepting Vinzant's allegation that he
mailed a grievance to LCC as true, he failed to show that he
completed the second step of the grievance process by mailing a
second grievance to the LCC Warden.   Haworth contends that,
pursuant to the LCC grievance procedures, Vinzant should have filed
Steps 1 and 2 at LCC and a Step 3 grievance at the LaDOC.   Vinzant
submitted a copy of the second-step grievance that he alleges he
mailed to the LaDOC pursuant to CARP.[2]

The LaSalle Correctional Center is privately owned by the

---

[2] LCC purports to have its own administrative remedy
procedures.   However, the LCC procedures do not have any
provisions for inmates who are transferred out of LCC.

10

Billy McConnell,[3] and privately operated by LaSalle Corrections, a
company which manages seventeen prisons in three states.   See
LaSalle Corrections *at* http://www.lasallecorrections.com/. La.R.S.
15:1172(D) states: "D. Any contractor operating a private prison
facility shall adhere to all provisions of this Part and the
administrative remedy procedures adopted by the department in
accordance with this Part."

    Therefore, Haworth's argument that Vinzant did not follow
LCC's administrative grievance procedures is meritless.   LCC is
supposed to be following the administrative grievance procedures
implemented by the Louisiana Department of Corrections, which
Vinzant maintains he did and Haworth has not proven otherwise.

    Haworth's motion for summary judgment is denied on the issue
of exhaustion.

Medical Care Claim

    Next, defendants contend that Vinzant failed to show he was
denied medical care after he was pepper-sprayed.

    Under the Eighth Amendment, a lack of proper inmate medical
care can be "cruel and unusual punishment" only if it is
"sufficiently harmful to evidence deliberate indifference to
serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct.
285 (1976).   A prison official violates the Eighth Amendment only
when two requirements are met.   First, the deprivation must be,

---

    [3] See http://www.nola.com/crime/index.ssf/2012/05/
jonesboro_family_is_a_major_fo.html

objectively, sufficiently serious and the prison official's act or omission must result in the denial of the minimum civilized measure of life's necessities.   Second, a prison official must have a sufficiently culpable state of mind, i.e. deliberate indifference to a prisoner's constitutional rights, to be subjected to a § 1983 liability to that prisoner. <u>Farmer v. Brennan</u>, 511 U.S. 825, 114 S.Ct. 1970, 1976 (1994).  Therefore, Vinzant's constitutional right to medical care was clearly established in 2013.

The Supreme Court defined "deliberate indifference" as "subjective recklessness", or, in other words, a conscious disregard of a substantial risk of serious harm. <u>Farmer</u>, 511 U.S. 825, 114 S.Ct. at 1980.  Because an inadvertent failure to provide adequate medical treatment does not violate the Eighth Amendment, deliberate indifference does not include a complaint that a physician has been negligent in diagnosing or treating a medical condition. <u>Estelle</u>, 97 S.Ct. at 291.  Disagreement with medical treatment also does not state a claim for Eighth Amendment indifference to medical needs. <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997).

A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. <u>Easter v. Powell</u>, 467 F.3d 459, 464 (5th Cir. 2006), citing <u>Domino v. Tex. Dep't of Criminal Justice</u>,

239 F.3d 752, 756 (5th Cir. 2001).  A prison official is deliberately indifferent to serious medical needs of prisoners if he intentionally denies or delays access to medical care.  Walker v. Butler, 967 F.2d 176, 178 (5th Cir. 1992); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987).

Vinzant contends he was beaten and sprayed with a chemical agent and that he should have had a medical evaluation afterward. It appears to be customary in most prisons, if not a matter of policy, to provide a medical evaluation to an inmate who has been sprayed with a chemical agent, but there is no Eighth Amendment violation where the inmate does not have a serious medical need.

Vinzant was allowed to shower after he was sprayed with a chemical agent.  Although he contends he was not allowed to shower long enough, defendants contend he was afforded the standard treatment of a shower and a change of clothing that is given to inmates who have been "pepper-sprayed."[4]  Defendants argue there is no evidence that Haworth knew Vinzant had any medical problems as

---

[4] FOX makes chemical agent sprays with the highest Scoville Heat Unit ratings that are available on the market. http://www.foxlabs.com/products/pepper-spray.html?. The instructions and warnings on FOX chemical agent spray state that the primary decontamination agent is Sudecon (another FOX product), and the secondary decontamination method is to remove the contaminated clothing and flush with plenty of water for at least 15 minutes, then wash with soap and water; if symptoms persist, contact a physician.  See FOX Labs International, Inc., "Material Safety Data Sheet" for 2% Pepper Spray with UV (Fog Delivery) at http://www.pepperspraysetc.com/msds/Pepper-Spray-Fox-Fog.pdf.

a result of being sprayed with the chemical agent[5] or that he intentionally withheld medical care from Vinzant.

Vinzant stated in his deposition that Haworth sprayed him with the chemical agent while the other officers kicked him, then Haworth left, presumably to work in the dining hall (Doc. 53, pp. 44-47/85). The remaining officers picked Vinzant up off the floor and took him to the shower for five minutes, then placed him in a lock-down cell (Doc. 53, pp. 46-47/85).

Vinzant testified in his deposition that Haworth should have known Vinzant needed medical care after he had sprayed him with a

---

[5]    Vinzant's medical records from Riverbend Detention Center in East Carroll Parish show that, on June 18, 2015, Vinzant complained  he had been maced and that his right ear was clogged (Doc. 41, Ex. 2, p. 1/7).  On June 20, 2015, Vinzant complained that he was having issues hearing in his right ear due to having been "pepper-sprayed" at LCC (Doc. 41, Ex. 2, p. 4/7). On June 26, 2013, Vinzant added that he also had a right upper jaw toothache; a nurse practitioner found Vinzant had swelling and redness of his right ear and the right external ear canals, diagnosed an oral abscess, otitis media and otitis externa (ear infection of the middle and outer ear), and prescribed antibiotics, ear drops, and Ibuprofen (Doc. 41, Ex. 2, p. 3/7). On August 14, 2013, Vinzant complained of ear pain and a "sticky substance" in his ear (Doc. 41, Ex. 2, p. 6/7).  On August 21, 2013, a nurse practitioner found Vinzant's external auditory canals were normal, diagnosed ear pain, and prescribed Ibuprofen (Doc. 41, Ex. 2, p. 7/7).  On September 10, 2013, Vinzant was transferred to the East Carroll Detention Center, where he complained that he had been maced in his right ear in June 2013 (Doc. 41, Ex. 2, p. 2/7).
    It is not clear, from the few pages of medical records filed by defendants (Doc. 25), whether having a chemical agent sprayed into his right ear caused Vinzant's ear pain and infection. Vinzant points to the fact that his medical records indicate that his ear pain and problems began right after the chemical agent was sprayed into his right ear.  Defendants have not submitted anything to refute this evidence.

chemical agent because it was the standard procedure to take the inmate to the nurse (Doc. 53, p. 51/85).  Vinzant stated in his deposition that he did not turn in a medical request form, but asked an officer on duty if he could speak with medical; Vinzant never received an answer (Doc. 53, pp. 49/50/85).  Vinzant further stated in his deposition that, when he saw the nurse at pill call, he told her he was not able to hear out of his right ear and the inside of his ear was burning from the chemical agent (Doc. 53, pp. 52-53/85).  Vinzant testified in his deposition that he also asked Sargent Deason for medical attention when he went to the shower the next day, but did not receive a response (Doc. 53, p. 53/95).  The next day, Vinzant was transferred out of LCC (Doc. 53, p. 54/85). Vinzant testified that he woke up with burning inside his ear for about three months, and used ear drops and ibuprofen for about one month (Doc. 53, pp. 56-57/85).  Vinzant testified in his deposition that, at the same time, he had an abscessed tooth for which he was given antibiotics and ibuprofen (Doc. 53, pp. 59-60/85).  Vinzant testified that his ear no longer burns, but he cannot hear out of it as well as he used to (Doc. 53, pp. 61-62/85).

It is clear that Haworth was not involved in the failure to take Vinzant to see the nurse after the incident.  Vinzant admits Haworth left the room after the incident and that other officers took Vinzant to the shower and the lock-down cell and ignored his requests for medical care.  Vinzant stated in his deposition that he did not see Haworth again before he was transferred out of LCC.

15

Therefore, Haworth did not deny Vinzant medical care.

Since there are no genuine issues of material fact which would preclude a summary judgment, Haworth's motion for summary judgment should be granted on this issue and Vinzant's claim for denial of medical care should be dismissed with prejudice.

Excessive Force

Vinzant contends Haworth used excessive force against him when he sprayed chemical agent on him.[6]

To state a claim for excessive force in violation of the Constitution, a plaintiff must allege (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need, and the excessiveness of which was (3) objectively unreasonable. Ikerd v. Blair, 101 F.3d 430, 433-34 (5th Cir. 1996). Vinzant's constitutional right to be free from the use of excessive force was clearly established in 2013.

To prevail on an eighth amendment excessive force claim, a plaintiff must establish that force was not applied in a good faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm, and that he suffered an injury. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996).

In determining the subjective intent of the officer, the trier

---

[6] Although Vinzant claims he was also kicked by the guards, he admits he does not know whether Haworth kicked him because his eyes were closed.  In any event, Vinzant has never alleged, complained, or proven that he suffered any injury from being kicked.

of fact must base its determination on relevant subjective factors suggestive of intent.  Some of the pertinent factors are the extent of the injury suffered, the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response. Bender v. Brumley, 1 F.3d 271, 278 (5th Cir. 1993), quoting Hudson v. McMillian, 962 F.2d 522, 523 (5th Cir. 1992).  A convict, or a pretrial detainee, need not demonstrate significant injury where the force used was malicious and wanton.  The core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Bender, 1 F.3d at 278, n. 6, quoting Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992).

The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force.  Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.  In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and

17

sadistically for the very purpose of causing harm.   LeBlanc v.
Foti, 487 F. Supp. 272, 275 (E.D.La. 1980), citing Johnson v.
Glick, 481 F.2d 1028 (2d Cir. 1973), cert. den., 414 U.S. 1033, 94
S.Ct. 462 (1973).

The law of the Fifth Circuit is that to support an Eighth
Amendment excessive force claim a prisoner must have suffered from
the excessive force a more than de minimis physical injury, but
there is no categorical requirement that the physical injury be
significant, serious, or more than minor.   Gomez v. Chandler, 163
F.3d 921, 924 (5th Cir. 1999).   However, the Eighth Amendment's
prohibition of cruel and unusual punishment excludes from
constitutional recognition de minimis uses of physical force,
provided that the use of force is not of a sort repugnant to the
conscience of mankind.   The absence of serious injury, while
relevant to the inquiry, does not preclude relief.   Siglar v.
Hightower, 112 F.3d 191, 193-94 (5th Cir. 1997).   Also, Wilkins v.
Gaddy, 130 S.Ct. 1175, 1178-1179 (U.S. 2010).

Haworth charged Vinzant with defiance, and his incident report
states that, when he interviewed Vinzant about his bottom bunk
pass, Vinzant kept raising his hands and Haworth ordered him to
keep his hands down (Doc. 25, p. 45/78).   Vinzant again raised his
left hand toward Haworth, and Haworth sprayed him with the chemical
agent (Doc. 25, p. 45/78).   Vinzant has not disputed the
allegations that he raised his hands toward Haworth, but claims
Haworth asked Vinzant to repeat the statement about legal action he

18

had made to Officer Sisom (Doc. 58).  Vinzant contends that, when
repeated the statement, Haworth sprayed him (Doc. 58).

Considering only the use of the chemical agent, Haworth's use
of force was not excessive under the circumstances, since Vinzant
failed to obey an order to keep his hands down and raised his hand
toward an officer.  Vinzant has not shown that Haworth sprayed him
with the malicious intent to cause harm.  Therefore, Haworth is
entitled to qualified immunity on this issue.

Since there are no genuine issues of material fact which would
preclude a summary judgment, Haworth's motion for summary judgment
should be granted on this issue and Vinzant's excessive force claim
should be dismissed.

Retaliation Claim

Vinzant contends Haworth pepper-sprayed him in retaliation for
his having told Officer Sisom that he would sue him if he injured
him.

To state a retaliation claim, Vinzant "must allege (1) a
specific constitutional right, (2) the defendant's intent to
retaliate against the prisoner for his or her exercise of that
right, (3) a retaliatory adverse act, and (4) causation." Peters
v. Quarterman, 252 Fed.App. 705, 706 (5th Cir. 2007), citing Hart
v. Hairston, 343 F.3d 762, 764 (5th Cir.2003).  The burden placed
on the inmate to demonstrate a valid retaliation claim is
"significant," and "[m]ere conclusionary allegations of
retaliation" are insufficient. Peters, 252 Fed.App. at 706, citing

19

<u>Woods v. Smith</u>, 60 F.3d 1161, 1166 (5th Cir.1995).  To meet his burden, Vinzant must "produce direct evidence of motivation," which he has not done, or he must "allege a chronology of events from which retaliation may plausibly be inferred."  Retaliation may be inferred from the exercise of the protected right to complain followed by an adverse act.  <u>Peters</u>, 252 Fed.App. at 706, citing <u>Woods</u>, 60 F.3d at 1164.  Also, <u>Gibbs v. King</u>, 779 F.2d 1040, 1042 (5th Cir. 1986).

Vinzant has not stated a claim for retaliation because he has not shown that he exercised his First Amendment right to file a grievance or seek legal action.  Vinzant's threat to sue Officer Sisom was not the actual exercise of his constitutional right of access to the courts.  <u>Watson v. Phillips</u>, 2012 WL 5336965, *10 (E.D.Tex. (5th Cir. 2012), citing <u>Peters</u>, 252 Fed.App. at 706.

Therefore, Haworth's motion for summary judgment should be granted on the issue of retaliation and Vinzant's action against Haworth for retaliation should be dismissed with prejudice.

Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Haworth's motion for summary judgment be GRANTED and that Vinzant's action be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another

20

party's objections within **fourteen (14) days** after being served with a copy thereof.   No other briefs (such as supplemental objections, reply briefs etc.) may be filed.   Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged.   Timely objections will be considered by the district judge before making a   final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this _17th_ day of September 2015.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE